UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | |
| LARRY WALKER | NO. 15-00138-BAJ-RLB-2 |

## RULING AND ORDER

At approximately 9:30 p.m. on September 2, 2014, Larry Walker (the petitioner here), Walter Glenn, and Thomas James, were driving eastbound on Interstate 10 through Baton Rouge, Louisiana in a rented Chrysler 300 when they were stopped by Sergeant Donald Dawsey who, at the time, was assigned to the West Baton Rouge Parish Sheriff's Office narcotics patrol unit. (Doc. 130 at pp. 1-2). As set forth in this Court's September 2, 2016 Order granting *in part* Walker's motion to suppress, this traffic stop ultimately resulted in an unlawful search of the Chrysler. This search failed to turn up any drugs. It did, however, yield substantial evidence of an identity theft and counterfeiting operation: specifically, 114 blank ID cards; 49 blank check sheets; 45 holographic overlays; a power inverter; a printer; scissors; tape; an iron; seven white envelopes with names and social security numbers written on them; multiple computer devices; a Garmin GPS device; "newly purchased items"; and, most importantly here, $95,019 cash. (*Id.* at pp. 5-6).

Walker, Glenn and James were arrested on the spot and charged by State authorities with identity theft. Later, the State turned the prosecution over to federal authorities. On October 1, 2015, this District's grand jury indicted Walker, Glenn and

James for unauthorized access device fraud. (Doc. 1). On October 29, 2015, the Government obtained a Superseding Indictment, adding counts of conspiracy, and aggravated identity theft. (Doc. 13). Relevant here, each Indictment also contained a forfeiture allegation, stating that upon conviction "defendants herein, shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(B), any property constituting, or derived from, proceeds obtained directly or indirectly, as a result of a violation of [these offenses], including but not limited to approximately NINETY FIVE THOUSAND AND NINETEEN DOLLARS ($95,019)[.]" (*Id.* at pp. 5-6; *see also* Doc. 1 at pp. 1-2).

In June 2016, Walker, Glenn, and James moved to suppress the evidence seized during the September 2 traffic stop, arguing that the initial stop, its subsequent duration, and the search of the Chrysler were each unlawful. (Doc. 130 at p. 6). After an evidentiary hearing, this Court ruled that the stop itself *and* its subsequent duration passed constitutional muster. (*Id.* at pp. 8-16). Further, the Court ruled that Glenn and James lacked standing to challenge the search of the Chrysler, because they were not named in the rental car agreement and thus lacked any possessory interest in the rental. (*Id.* at pp. 24-25). As to Walker, however, the Court ruled that the warrantless search was unlawful because it was conducted without valid consent and without probable cause. (*Id.* at pp. 17-24). As a result, the Court suppressed all evidence recovered from the Chrysler as to Walker, and as to Walker *only*. (*Id.* at p. 25). The Government immediately appealed, and the U.S. Court of Appeals for the Fifth Circuit affirmed this Court's ruling in all respects.

2

*United States v. Walker*, 706 F. App'x 152 (5th Cir. 2017).

Upon return from appeal, on the Government's motion, the Court dismissed all charges against Walker. (Doc. 159, Doc. 160). But the proceedings against James and Glenn continued. On December 11, 2017, James pleaded guilty to all Counts set forth in the Superseding Indictment, pursuant to a signed plea agreement wherein he expressly admitted that during the September 2 traffic stop "officers found blank check stock, blank ID cards, over $95,000 in cash, and other evidence of a counterfeit check scheme." (Doc. 221 at p. 6; *see also* Doc. 227). James further admitted:

> Forensic examination of a computer and thumb drive seized from the car revealed check-making software, ID card templates, "The Ultimate Fake ID Guide 2011 Version 8," photographs of checks, signature images, hundreds of [social security numbers] and bank routing and account numbers.
>
> Walmart's check processor discovered that 39 counterfeit checks purportedly drawn on a Texas Builders Foundation (TBF) account at a U.S. Bank and signed by Jared Angaza were cashed at Walmarts in southeastern Texas between August 26, 2014 and September 2, 2014, the day of the traffic stop. A similar check and images of the TBF logo, the U.S. Bank logo, and the Angaza signature were located on the seized thumb drive. Analysis of data extracted from the Garmin GPS device seized from the car revealed that at or near the time when each counterfeit check was cashed, the device was located at or near the Walmart which cashed the check.

(Doc. 221 at pp. 6-7). At his re-arraignment, James again admitted to the same facts, this time under oath. (Doc. 281 at pp. 43-44, 47).

Glenn, by contrast, proceeded to trial. (Docs. 234, 235, 236). The result, however, was the same: guilty on all counts. (Doc. 232).

Ultimately, the Court sentenced Glenn to 120 months imprisonment, (Doc. 290 at pp. 2-3), and James to 88 months imprisonment, (Doc. 297 at pp. 2-3). Additionally,

3

and most relevant here, the Court ordered Glenn and James to pay restitution of $949,587.87 to Walmart, and to forfeit the $95,019 (and other items) recovered from the September 2 search. (Doc. 290 at pp. 7-8; Doc. 297 at pp. 7-8). The Fifth Circuit affirmed James's conviction and sentence on May 24, 2019; and affirmed Glenn's conviction and sentence on July 26, 2019. (Docs. 334, 335).

Now, Walker, the odd man out, returns to this Court, demanding return of "$31,673.00 in United States Currency," his *pro rata* (one-third) share of the $95,019 seized from the Chrysler on September 2. (Doc. 338). Walker alleges that he has suffered "substantial hardship" as a result the Government's "continued possession" of his $31,673, and, without offering any evidence, asserts (1) "the cash clearly belongs to [him]," (2) "said cash is not contraband," and (3) "the seizure was illegal for it arose from the illegal search of [his] rental vehicle." (Doc. 338-1 at pp. 2-3).

The Government opposes Walker's motion, arguing that "Walker is not, and never was, entitled to the lawful possession of the seized cash," and that "[t]he seized cash is clearly subject to forfeiture as proceeds of the fraud and should be used to at least partially satisfy the restitution ordered." (Doc. 339-1 at p. 3). In support, the Government offers a May 12, 2015 U.S. Secret Service Investigative Report, which concludes based on a forensic examination of the computers and Garmin GPS device seized from the Chrysler that in the week prior to their Baton Rouge arrest Walker, Glenn, and James cashed 39 counterfeit checks at Walmarts throughout Texas, for a total of $111,929.80. (Doc. 339-3 at pp. 1-13). Walker does not respond to the Government's opposition, much less offer anything to rebut the Government's

4

evidence.

Walker's demand for return of his share of the $95,019 plainly fails, procedurally and substantively. First, Walker has invoked the wrong procedural mechanism to obtain recovery of the seized cash. Specifically, Walker argues that the "cash should be returned … according to the procedures specified in Rule 41(g) of the Federal Rules of Criminal Procedure and 18 U.S.C. § 983(f)." (Doc. 338-1 at p. 4). But Fifth Circuit law holds that when, as here, a criminal case is concluded, a party's demand for recovery of seized property must proceed as a separate "civil complaint under the court's general equity jurisdiction under 28 U.S.C. § 1331." *Bailey v. United States*, 508 F.3d 736, 738 (5th Cir. 2007); *see also United States v. Jones*, 202 F. App'x 721, 722 (5th Cir. 2006) (citing authorities). Rather than dismiss on this basis alone, however, the Court will treat Walker's motion as a civil complaint, and the Government's opposition as an unopposed motion for summary judgment. *See, e.g., United States v. Robinson*, 78 F.3d 172, 174 (5th Cir. 1996).

Construed as a "civil complaint," Walker's demand fares no better on the merits. The summary judgment standard is well-set: to prevail, the Government must show that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In making this assessment, the Court must view all evidence and make all reasonable inferences in the light most favorable to Walker—the non-moving party. *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 824 (5th Cir. 2022). Even so, Walker *must* counter with *evidence* to support his claims: "A non-movant will not avoid summary judgment by presenting

5

speculation, improbable inferences, or unsubstantiated assertions." *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (quotation marks omitted). To the point, summary judgment is *required* if Walker fails to "produce any summary judgment evidence on an essential element of his claim." *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990).

As indicated above, Walker argues *only* that his share of the $95,019 "should be returned to [him] according to the procedures specified in Rule 41(g) of the Federal Rules of Criminal Procedure and 18 U.S.C. § 983(f)." (*See* Doc. 338-1 at p. 4). Significantly, to prevail under Rule 41(g) *and* § 983(f), Walker must prove (1) he maintains a *lawful* possessory interest in the cash and (2) the cash is *not* contraband. *See Ferreira v. United States*, 354 F. Supp. 2d 406, 409 (S.D.N.Y. 2005) ("To prevail on a [Rule 41(g)] motion, a criminal defendant must demonstrate that (1) he is entitled to lawful possession of the seized property; (2) the property is not contraband; and (3) either the seizure was illegal or the government's need for the property as evidence has ended."); 18 U.S.C. § 983(f)(1)(A) & (E), f(8)). Here, Walker has not produced *any* evidence to show a lawful interest in his asserted share of the $95,019, or that the cash was not contraband. To the contrary, the *unrebutted* evidence—James's sworn admissions *and* the Secret Service Investigative Report—establishes that the $95,019 recovered from the September 2 search was ill-gotten proceeds "of the counterfeit check scheme" that ultimately resulted in Glenn's and James's convictions. (Doc. 281 at p. 43; *see* Doc. 339-3 at pp. 1-13).

Having failed to produce any evidence that he is lawfully entitled to the seized

6

$95,019, or that the cash is not contraband, and in the face of substantial evidence that the $95,019 is, in fact, the proceeds of Defendants' illegal counterfeiting scheme, summary judgment must be entered in the Government's favor. *Geiserman*, 893 F.2d at 793.

Accordingly,

**IT IS ORDERED** that Mr. Walker's **Motion For Return Of Seized Property (Doc. 338)** be and is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Walker's demand for return of "$31,673.00 in United States Currency" (Doc. 338) be and is hereby **DISMISSED WITH PREJUDICE**.

Baton Rouge, Louisiana, this 3rd day of May, 2023

_____
**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**